## FIDELITY STORAGE COMPANY *v.* HOPKINS.

---

MASTER AND SERVANT; NEGLIGENCE; DEATH BY WRONGFUL ACT; DIRECTION
OF VERDICT.

1. If an employee has knowledge of the circumstances under which the employer carries on his business, and accepts the employment, he assumes such risks as are open and obvious.

---

Note.—Upon the question, *Volenti non fit injuria* as a defense to actions by injured servants, see note to *O'Maley* v. *South Boston Gaslight Co.* 47 L.R.A. 161. And as to when an assurance of safety is not conclusive in the servant's favor, see note to *McKee* v. *Tourtellotte,* 48 L.R.A. 545.

2. Where a workman engaged in cleaning windows fell from a short
stepladder which he had placed upon a scaffold, and was killed, it
was *held*, in an action against his employer for the death, that the
trial court should have directed a verdict for the defendant, where
the evidence failed to show that the scaffold itself was unsafe or
insecure, and showed that, while the foreman of the intestate was
on the scaffold at the time, his presence had nothing to do with the
falling of the intestate, although one of the fellow workmen of the
intestate testified that just before the accident he saw the boards
forming the floor of the scaffold were springing in the middle, and
warned the intestate not to go on the scaffold, whereupon the fore-
man said to the intestate that it was all right. (Mr. Justice Robb
concurring in the result.)

No. 2831. Submitted November 4, 1915. Decided December 6, 1915.

HEARING on an appeal by the defendant from a judgment of
the Supreme Court of the District of Columbia, on verdict, in an
action to recover for the alleged negligent killing of the plain-
tiff's intestate.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment recovered by plaintiff,
Mary E. Hopkins, administratrix of the estate of Frank Hop-
kins, deceased, against the Fidelity Storage Company for in-
juries resulting in the death of said Frank Hopkins.

The declaration in four counts alleged that the deceased was
employed by the defendant, and engaged in cleaning certain
windows in the building owned by it; that it was the duty of
defendant to provide a reasonably safe place to work, and in
disregard of this duty it directed the deceased to go to work on
an insecure and negligently constructed platform, and by reason
of the default of defendant, intestate was thrown from the
scaffold to the floor, sustaining injuries from which he died.

Other counts elaborate this charge, specifying that intestate
was directed to go upon an unsafe platform, well known by de-
fendant to be unsafe, but unknown to the plaintiff, and there-
fore plaintiff was thrown down and injured.

The fourth count charges that intestate was standing upon

the platform engaged in work, whereto he had been directed by foreman of the defendant, and that said foreman negligently .climbed upon said platform, and did then and there cause the same to collapse, and thereby to precipitate intestate down to the floor of the building.

Plaintiff's testimony tended to show that she was administratrix of the intestate's estate; that she was his wife, supported by him, and that he earned $1.60 per day.

Samuel Chapman testified that he was working in the building of defendant upon said date, and scaffolding in the office building was being used for the purpose of cleaning windows; that one end of boards 2 inches thick by 10 inches wide, and about 16 feet long, rested upon the top of a stepladder about 8 or 10 feet high, and the other ends of the boards rested upon a heavy iron door to a vault; that upon said scaffold one end of a short ladder was resting, the other end resting against the partition wall, and upon which the deceased was working. Hopkins, when first seen on the scaffolding by the witness, was there alone, and the foreman went up sometime later. The deceased placed the short ladder on the scaffolding, and it was handed to him by the foreman, Gant. Witness looked up, holloed, saw one end of the ladder upon which the boards were resting tip, and the small ladder and the deceased both fell to the floor; Gant, the foreman, also fell to the floor; the small ladder fell between the scaffolding and the wall, and the deceased fell in the opposite direction. The ladder upon which the boards were resting did not fall; the boards themselves did not fall; the scaffolding, or any part thereof, did not fall. Witness had just come to the front part of the building, and was working around the side of the partition on which the accident happened; he just happened to look in time to see the deceased fall as described.

One Clifford Edwards testified that he was employed by the defendant, and was working in the vault, which opened into the office room of the building, and did not see the accident. Just a short while before the accident he noticed that the boards, one end of which was resting upon the stepladder,

were springing in the middle; that he said to Hopkins, the deceased, "I wouldn't go up there, if I were you," and that thereupon Gant, the foreman, said: "It's all right;" witness went on in the vault, and did not see the accident; at the time he noticed the board springing in the middle, there was nothing on the scaffold but the small ladder.

Defendant offered the testimony, first, of Austin Wells.

He said, as he stooped to dip his paint brush in the bucket of paint, he happened to turn his head and look in the direction of the scaffold, when he saw Gant on the scaffold, and he also saw Hopkins place a small stepladder on said scaffold, resting the same against said glass partition, and started to mount said ladder; Hopkins mounted one or two steps, then put his hands to his face, and fell backward to the floor of the room; that Gant reached over to grab Hopkins as he was falling, and, in so doing, fell to the floor of the room; witness had nailed a strip about 2 inches wide to the outside edge of one of the boards constituting the floor of the scaffold, so that a ladder placed thereon could not slip off the same; the scaffold was constructed by placing two boards, 2 inches thick and 10 inches wide, one on top of the other, about 16 feet long, one end of which rested upon the top of a stepladder about 10 feet high, the other end rested upon the top of an iron grating which extended from the wall, at the top of which was the glass partition, at which the deceased was working, to a cement post or pillar, about 18 inches in diameter; that said boards projected some 3 or 4 feet beyond the said iron grating and the said stepladder upon which they were resting; that the stepladder was upon a cement floor and the feet of the stepladder were not fastened to the floor; that the outside of the stepladder upon which the boards were resting was upon an iron grating; that the said boards were nailed to the said ladder; that the boards were nailed to the same by the witness, who used eight-penny nails, and who drove the nails through the boards and into the ladder, on a slant, known as a toehold, in order to keep the boards from slipping from the top of the ladder; there was a ladder extending from the floor to the scaffolding, which leaned

against the center of the scaffolding; at the time of the accident, Hopkins and Gant were near the ladder, both on the same side of it. On the morning of the accident, Hopkins asked the witness to allow him to use a short stepladder about 4 feet high, belonging to witness; that permission was given to Hopkins to use the ladder; and that Hopkins took the ladder, and himself placed it on the scaffold, and proceeded to mount as hereinbefore described. That the board on which the stepladder was resting did not fall; nothing fell except the small stepladder which was upon the scaffold, and the deceased and Gant. The said small stepladder fell in the space between the scaffold and the wall, and did not fall to the floor, but stood on its feet resting against the wall. Witness had, several days before the accident, worked upon the said scaffolding alone, and at that time there was no other person on the scaffold but him; that he had had considerable experience in building scaffolds; that he had been a painter for eighteen years, and during that time built a number of scaffolds; that the scaffold upon which the deceased was working was a safe one.

Gant testified that he was employed on the 12th of June, 1913, as foreman; was working in the office room of the building of the defendant company, cleaning the glass work in a partition wall; in order to do this cleaning, he was standing on a scaffold about 10 feet from the floor; that as he was engaged in the work the deceased came onto the scaffold, and told him that he had finished the work in which he had been engaged, and was ready to help the witness. Hopkins procured a short ladder, which he placed upon the scaffold; as Hopkins started to mount the small stepladder he suddenly fell backward off the scaffold; witness reached for him to prevent him from falling, and, in so doing, lost his balance and fell to the floor; witness and Hopkins were near the center of the boards, and on different sides of the short ladder, which was leaning against the boards; that he did not have hold of the small ladder on which Hopkins was mounting; witness was cleaning the lower part of the windows, and had been so engaged all the morning from 8 o'clock; the accident took place about 10:30 o'clock;

the scaffold consisted of two boards 2 inches thick, 10 inches wide, about 16 feet long, placed on top of each other, one end of which boards rested upon the iron grating extending from the cement column or pillar to the wall, and the other ends of which rested upon the top of the stepladder, which boards were nailed to the top of the stepladder, and to the outside edge of which boards there was nailed a strip about 2 inches wide, to prevent a ladder slipping from said boards. When Hopkins fell, the stepladder upon which he was working fell in the space between the scaffold and the wall; that the boards did not fall, nor did the ladder upon which they were resting fall. That the said scaffold was safe; that it had been inspected that morning by the witness before he started to work upon the same, and that it was a secure and safe scaffold. That he did not hear the witness Edwards says to the deceased, "I wouldn't go up there," and that the witness did not say to deceased, "It's all right." Hopkins himself placed the short stepladder upon the scaffold.

Another witness testified to the character of the scaffold, corroborating the others. That he saw Hopkins and Gant working on the scaffold, engaged in washing the glass work of the partition. Hopkins got a small stepladder and himself placed it on the scaffold.

At the conclusion of the evidence the defendant asked the court to instruct the jury to return a verdict for the defendant, which instruction the court refused to grant, and defendant took an exception.

*Mr. Daniel Thew Wright* and *Mr. T. Morris Wampler* for the appellant.

*Mr. Benj. L. Gaskins* and *Mr. Armond W. Scott* for the appellee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

If an employee has knowledge of the circumstances under

which the employer carries on his business, and accepts the employment, he assumes such risks as are open and obvious. *Anderson* v. *Smith,* 35 App. D. C. 93–95.

It appears from the noncontradicted evidence in this case that the scaffold was not in itself unsafe or insecure. It was open to the view of the intestate, and he engaged in labor upon it. It may have been a risk for him to mount on the short stepladder placed on the planks, but, if so, it was a matter within his observation, and he assumed the risk of it.

There is nothing in the testimony to show that the foreman's, Gant's, presence on the scaffold caused the plaintiff to fall. The scaffold did not fall, nor did the boards break.

How the accident occurred is purely a matter of speculation. If the witness Edwards is to be believed, that he saw that the boards of the scaffold were springing in the middle before intestate mounted it, and warned him, saying, "I wouldn't go up there if I were you," and, having his attention specially called to the springing of the boards, plaintiff's intestate went upon them, and placed his short stepladder, and mounted the same to proceed to work, the reported remark of the foreman, Gant, that "It's all right," did not warrant intestate in taking the risk.

We are of the opinion that no negligence of the defendant was shown by the evidence, and that intestate assumed whatever risk there was.

The court should have given the refused instruction.

The judgment is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*

Mr. Justice ROBB concurring in part:

In my view, the working place of the deceased consisted of the narrow planks suspended 8 or 10 feet in the air and the short ladder resting thereon. That this is so is apparent from the evidence of the defendant that a strip had been nailed to the outside edge of one of the planks, so that the ladder could.

not slip off.   In other words, it was contemplated, before the deceased mounted the short ladder, that he should do so.   I dissent from the view that such a contraption may be held, as matter of law, to constitute a reasonably safe place to work. The floor was of cement.   The stepladder, upon which one end of the plank rested, was not secured in any way.   Little time would be required, in my opinion, for twelve practical men to determine, as matter of *fact,* that the moment the deceased mounted the short ladder, one end of which rested on the planks and the other rested against the wall, the stepladder would be pushed out sufficiently to overthrow the equilibrium of the deceased.   This the defendant was bound to know and, in my view, it clearly was guilty of negligence in providing such a dangerous working place.

But the danger was so obvious that I cannot escape the conclusion that the deceased must have apprehended it and taken his chances.   Had it been of a complex nature, the evidence tending to show that the defendant's representative assured the deceased of the safety of the device would have made a case for the jury.

I concur in the result.